Good morning, your honors. If I may, I'd like to reserve five minutes for rebuttal. Before I address the gist of our filing, I would like to address very briefly the Rule 28J letter that was filed on the 13th on behalf of Mr. Holder. I certainly am not in the habit of filing anything that close to a setting, but in light of the Supreme Court's interim ruling, if you will, in Johnson v. United States, I felt that I had no choice but to make this court aware and to attempt to preserve, depending on how this case resolves, the issue that was not raised below, in light of this circuit's settled precedent relating to the residual clause, because once again, what we're here on is the Armed Career Criminal Act. Our issue today is not specifically the residual clause. As I indicated, that was not raised below. We've referenced that in the letter, but I think that our request is legitimate that we be allowed to preserve that at this point. I would state that if your honors would request or allow supplemental briefing, I would be more than pleased to do that. I would also ask that the court consider holding ruling in this matter in abeyance until we see and it's determined what ruling comes in the Johnson case. It appears that one will be coming, given the tenor of the Supreme Court's request for briefing. In light of that, we have raised that issue. Again, I apologize for the timing of the filing, but I've just never had it fall that way, where an issue could be so determinative, because coincidentally, if you will, in Mr. Holder's case, as both parties have stated in our filing, there's no dispute that he had prior felonies, which could have been considered for armed career criminal in his case. One, both sides... I only got this 28-J letter a half an hour before I walked into court, but I'm okay with that. I mean, you had circumstances, so that's fine. Yes, sir. But I'm wondering how it relates, actually. This case, as I understand it, is briefed, and the argument that you've prepared for has to do with whether the priors are separate or not, not whether they qualify or not. Yes, sir. So there's no question whether they qualify, but now you want to raise the question of whether they qualify in the first place before we figure out whether they're separate? Is that the idea? I think that is what may be coming, and that is our request. That's the basis of the letter, because the evading arrest, that is the other felony from January 25th of 2003, the attempted... The evading arrest. I'm just thinking through this with you. The evading arrest part, you might want to challenge that... Yes, sir. ...because it came through on a vague and now invalid... Yes, sir. It would be, if anything, it would be under the vagueness clause. Thank you. That helps. Yes, sir. I'm sorry. As we have indicated, we objected below consistently to the court's consideration of documents that we offer, material that we offer was not proper under Shepard and its authority, specifically the affidavits of complaint. We understand that the Jones case, Sixth Circuit precedent, has allowed, since that ruling, that affidavits of complaint can be considered for very limited purpose, occasions separate from one another or different occasions. However, as we've indicated in our filing, I think that that very holding may well be ripe for review, for reconsideration. I think the instant case is a good example of why that may be true. If we look at the documents that were offered, and the documents that were offered by the defense are the indictment, the judgment, which incorporates, I guess, the plea, but it's the indictment and the judgment. It's clear that the indictments on January 25, 2003, to which Mr. Holder pled, there were multiple counts, but the indictments state on their face that on or about that date he possessed a sawed-off shotgun. That's not relevant for our issue today. On or about that date, count two, that he committed a felony evading in Carroll County, Tennessee. All of these matters were charged and pled in Carroll County, Tennessee, in this indictment. The other count, reckless endangerment, that ended up being dropped, driving, which is not at issue today. But we have the evading arrest, the felony evading arrest, charged in Carroll County. I would offer to the court, neither side has really stressed that issue in our briefing, but it is factually correct, and the record supports this statement, that even if it was proper, and the court continues to maintain that it is proper, for the judge to consider the affidavits of complaint for the limited issue of different occasion, even if that remains true, what these affidavits of complaint show does not help us. It doesn't get us to that decision. It doesn't provide any information that is informative, really, or helpful, or dispositive, because what Mr. Holder was charged with in Carroll County, Tennessee, was a felony evading arrest, driving off from the officer. What he pled to was, in Carroll County, Tennessee, evading arrest, and the other charges, the possession of firearm. What the government offered, through the affidavits of complaint, which are the lower courts in our jurisdiction, it's the lower courts charge, if you will, pre-indictment often, and in this case it was, but the affidavits of complaint have much more of a narrative, and sometimes include descriptions of people, and what they were wearing, and things that have no bearing on the actual charge, on the actual elements of the offense. But they indicate, and we object to their consideration, but they indicate that he then went into Henry County, Tennessee. That's what brings us to the Bing maps, where the government again offered to show, look how far he went. It's our position that the government is stating that there somehow is a difference that matters, whether he ran on foot or not, he fled in a vehicle, how far he went, and whether he crossed a county line, because there's nothing else that that affidavit of complaint, even if it is proper, can show us. It doesn't show a timeline. Everything is alleged January 25, 2003. There's absolutely no time indicated in any of the documents. So we have one date, our offer is we have one event, the attempted robbery happens, he runs off in a car, he is caught later by officers, but if you look at, even if you consider the affidavit of complaint, all it tells you is at some point he apparently crossed into Henry County. He's never charged in Henry County, he's charged in Carroll County, which is where the event originated. So it's our position, you're charged there. Clearly, legally, and factually, the felony evading occurred in Carroll County. It had to have begun in Carroll County. Where it ended we only can know from the affidavit of complaint, to which we objected, but we know it occurred in Carroll County because he was charged and he pled there. So it is our position very simply that factually, in this particular case, it makes no difference how far he went. It makes no difference whether he crossed a county line or crossed three county lines. What we know that we're entitled to consider is... Can I ask you one question about the factual matters here? Do you have anything to say about whether there was an end point to allegedly one offense and a beginning point to the other offense? Or is that important to your analysis at all? I think it is a factor. Under Hill, clearly it's one of the three Hill factors, if you will, that either together or standing alone can support finding of a separate event. I don't think you can determine it, to be very honor, from the documents we have in this case, from the facts in the indictment and the judgment, you cannot make that determination. I think it is a legitimate question. Obviously, Hill indicates that it is. But I think our particular facts, even if the court finds it was okay, even if your honors find it was proper to consider the affidavit of complaint, it still doesn't answer that question. All we know is there's an attempted robbery. Police are called by the victim, apparently, or victims. Mr. Holder flees in a vehicle. I would offer that prior cases that have indicated, I think, factually, our facts are somewhat different, every case is, but I'd offer this is no different than committing an assault, committing a burglary, running into the woods. We've seen the facts in that before. You're caught, and then you assault the officer, or then you fight. That that is one event. I think what we have is an attempted robbery and fleeing from that robbery. It's one event, I think, legally, and I think the government's burden of splicing that or of dividing that simply cannot be met based upon the facts from the indictment, the judgment, or even the complaints to which we objected. So I think that since the burden is on them, it is a legitimate inquiry, but I think we simply cannot determine it in this case. All right. Thank you. Thank you. May it please the Sonoma Court, James Powell for the United States of America. The government's position has been throughout that the court was allowed to and appropriately did review the affidavits of complaint that were submitted based on the prior court rulings, specifically United States v. Jones, the 2006 case, and then that, I think, was affirmed in the Wells decision as well as Medina-Almaguer. So the court's reliance on the affidavits of complaint for the sole purpose of It's not permissible for purposes of determining the offense conduct, but this is an unrelated matter as to what the defendant actually was convicted of or pled guilty to. So I believe that that allows for that separation between the other cases and these types of cases that they can consider that affidavit of complaint for that specific purpose. I think part of the problem in my research that I discovered is the use of the terms. We use affidavits. We use complaints. And in Shepard, the court was referring to police reports and complaint applications. And in the state of Massachusetts, they have a process where there is a complaint application and then a complaint. And then the complaint application is not to be considered, but the complaint is a separate legal document from the complaint application. In fact, there's a citation in the Massachusetts law that references the tolling of the statute of limitations does not occur by an application for complaint, but it does by a complaint. So I think the court in Shepard was dealing with the situation in the state of Massachusetts where they have an application of complaint, which is different from the affidavit of complaint in the state of Tennessee. The court in Jones stated that it was a judicial document, that it's filed under oath, and that it's in furtherance of prosecution. And I think that is what allows us to continue to use the affidavit of complaint in this circumstance. The court also applied the Hill test using the three factors. They're not the only factors, but the Hill test came after a number of decisions, Brady, Wilson, Graves, and Murphy, basically, and Thomas, I think, that had dealt with this issue, and the Hill decision gleaned from those the three-factor test that is traditionally applied. Prior to that, Brady had used the time, place, and victim, which is not always sufficient, but the Hill test, I think, is. And the court applied that, found that all three of the factors in this case were present, and also the court has been asked to overturn that decision, and the government would respectfully ask the court to not do that and continue to rely on the principle that only an en banc decision or a decision of the Supreme Court can change the law as declared by a prior panel. Mr. Powell, could I ask a question about the 28-J letter? Does the Attorney General take some position on how cases should be treated pending the Supreme Court consideration of whether to hold some aspect of the act void as vague? If the Attorney General has made that decision, as far as I know, it's not been presented. What about your office? What are you doing? Well, this was the first notice that this has come up, and as far as I know, my office is likewise. Well, what position are you taking in this case, then? In this case, I would submit to the court that that was a decision or an issue that's previously been ruled on, that the otherwise clause has been declared not void for vagueness. In our circuit? Yes, sir. So we should just continue to march without regard to the fact that things may change or may not? Well, and I think that's the issue. It may or may not. I'm asking for your advice on how we should proceed in cases like this. We can make it up, but I at least would like to know what the government thinks we ought to do. I think, again, in this case, this is not an issue that could not have been raised in the district court. The government has frequently… Couldn't have raised it without the judge saying that's already been decided here in this case. And we have had that on multiple occasions where an issue is raised solely for the purpose of preserving it on appeal. And the Apprendi arguments in regards to armed career criminals and prior pressure. Yeah, but in Apprendi, people knew that was coming or at least thought it was coming for a long time. But we still get that same argument. The question is do they have to do that in order to preserve something that's so clearly off, out of bounds until all of a sudden it wasn't so clearly out of bounds? But that's your position is that they've waived it? At this time, yes, sir. The issue regarding the maps, if that is an issue for the court, the government would submit that it is a non-issue. The court below was allowed to take judicial notice of the separate locations that were given in the affidavits of complaint. And to that point, the government has never argued or contended that the issue was how far the defendant went or the fact that he crossed a county line. The affidavits of complaint clearly delineate two separate locations. The court could take judicial notice of those being separate locations. And the maps that were used were merely demonstrative aids to the court to show the two locations. And they were not admitted for the purpose of bolstering the government's argument. The basis that I presented to the district court for including those as exhibits was should this case be appealed, the court could see the exhibits that had been used as demonstrative aids in the sentencing hearing. So that was the only basis for the government's use of the maps as demonstrative aids to assist the district court in its judicial notice determination. Regarding the end point, Judge Clay, you asked about the discernible or definable end point. And I think that is kind of the overarching principle in all of these cases is there a definable end point. The cases of Graves and Thomas and Mann and Barber, the court was unable to determine that there was a definable end point to one before the second began. And in most of those cases, if not all of them, the occurrences that resulted in two separate convictions were at the same location. In Graves the court looked at this question and that was the exact result of their reasoning was that because it's the same location, this is one episode. In the Mann case, it was the same location. The police car was at the same location next to the bar where the incident occurred. In the Barber case, the group of defendants chose to rob a store and in the process of going to the store they robbed somebody that was in the parking lot next to it. Same location again. So in this case, I think the affidavits of complaint that the court is allowed to rely on clearly show the two separate locations. They're delineated specifically in the affidavits of complaint. The court ruled in this case that there was an end point when the defendant was able to access a telephone and call the police and say that somebody tried to rob me. I think reason would get us to the conclusion that at that point the attempted robbery had been completed. The evading arrest doesn't begin until the pursuit by the police officers. And that occurs at a separate location when the defendant refused to yield to the officer's signal and that resulted in the evading arrest charge. It doesn't matter how far he went. It doesn't matter that he crossed a county line. The fact that he committed crimes in two separate counties in one unpublished opinion was the delineating factor for the judge in the district court. They said, well, there's two separate counties. That's clearly two separate occasions. In this case, he went from one county to the next so that wouldn't factually apply. How far he went only is an issue between the two offenses. He went some distance from the first location after that crime had been committed until he was confronted by the police. And the government would submit that the court has properly ruled in that matter. The defendant basically has agreed that the court followed circuit precedents. I'm sorry. The court followed and identified the Hill factors and applied those appropriately and then concluded that if the facts were found as the court did, then the different occasions test is met. The government submits that those concessions and the rulings of the district court should result in this case affirming the district court. And that's all I have. If the court has any other questions, I'd be more than glad to attempt to answer those. Apparently not. Thank you. Your Honor, just briefly in closing, I would state again that I think it was improper. I guess I'll start with the Bing maps. It is our position. They were not simply offered by the government as a demonstrative aid or as, I guess, as a demonstrative aid for the court's use. I don't think, I mean certainly the judge can take judicial notice of a variety of things, but I don't think this is, I don't think the offer of the Bing maps was in the same realm as, for example, asking the court to take judicial notice that water freezes at 32 degrees Fahrenheit. I don't think any person can legitimately object to a judge taking notice of that type of fact, that type of issue. But I think the Bing maps come from the problem of the affidavits of complaint. If you look at the charging instruments, if we're talking Shepard documents, what are these convictions? What do we have here? Do we have one? Do we have three? Are they violent? If we look at the charging documents, they're all Carroll County, evading, possession of a firearm, reckless. The evading is alleged to have occurred in Carroll County. The affidavit of complaint draws us into Henry County and references that Mr. Holder crossed into Henry County. What it doesn't tell us, for example, is where is he apprehended. It doesn't give us any timeline. It doesn't give us any information as to where he was apprehended. All we know that he admitted to and was convicted of is in Carroll County on the same date he pled to the attempted robbery of Mr. Tharp in Carroll County. He pled to evading arrest in Carroll County. If the affidavits of complaint are proper, they still don't answer the question. They don't tell us if it's separate events or not. And I offer that the government is taking the position and asking your honors to find that there is a meaningful difference as to how far he went. In this case, it happens to be across a county line. But I would offer that, and we don't know. We simply do not know. We cannot know the facts from any of these materials that have been submitted. But had he been in a vehicle, driven off from Mr. Tharp, and 500 feet later run into a ditch, run off from the police on foot, as the affidavit of complaint indicates he did, I would offer that that timeline would apparently be short. It would be contemporaneous, virtually. But we simply don't know that. It is impossible to know the temporal connection, even if you consider the affidavit of complaint. It is impossible to know the proximity physically, even if you consider it. And we object to its being considered. All we know is it says he went into Henry County. The only way that we know Carroll County versus Henry County, how far is it geographically, approximately, is the Bing maps. And it's our position they are absolutely not properly admitted because the only purpose they can serve is to give the government... Why can't judicial notice be taken even if they are relevant and determinative? I mean, it's the type of thing that a judge can take judicial notice of, right? I think the judge can take judicial notice of the fact that Huntington, Tennessee is in Carroll County. The location... What if he doesn't know? Can he look it up? He probably knows that it's in Carroll County. Another judge might not be sure and want to look it up in the dictionary or the atlas. Yes, sir. Can you look in an atlas and say, oh, I guess it is? I think you possibly... Again, the location of... It is within judicial notice to take notice of that kind of thing, isn't it? Of a specific fixed location on a map, possibly. But I would offer that is not what the government... No, sir. In our position, it is not. Because what the Bing maps were offering, what the transcript shows and the record shows is the government used them to create, to provide to the court the proximal separation, the separation geographically. I know how far Columbus is from Cincinnati, but some other judge might not and want to look it up in a book. They can't do that? I think it's not proper for the government, who does bear the burden, for the government to say because, and I would offer merely because is my take on it, we traveled apparently... And here's the problem. We say the government was offering it to say he traveled from this point, the point that's referenced in the affidavit of complaint, to this point in another county. We don't know where he was apprehended. The affidavit of complaint doesn't tell us that. But that's, you're not finding that out from Bing. You're just finding out how far away these places are. But again, I think that that's not a proper document to do it. Could it have been done some other way? In this case, probably not. An atlas might have been okay, but the internet's touchy, edgy? Well, no, sir, I don't think it matters whether it's bound in a book or not. I simply think Shepard is so restrictive that if the government can't do it under documents that would be appropriate under Shepard, they simply can't do it. Can I ask one more question? Yes, sir. We're either going to agree with you or not on that issue. Let's assume for the moment that we agree with you. Presumably you would want us to rule on that promptly and not wait for the other issue. Well, Your Honor, I would state that, except that, I can state to Your Honor, certainly Mr. Holder is in prison. He is in custody. Even if we are fully successful on all of our issues, on the armed career criminal, the issues we've raised, or the matter under the Rule 28 letter, he will remain in custody. He would not be subject to immediate release, so I'm not asking that. Do you not have any objection to our ruling promptly in your favor? I would have no objection to your ruling promptly in my favor, yes, sir. Okay. Now let's assume that's one possibility. The other possibility is that we rule against you on that. If we are inclined to rule against you on that, then what do you advise? That we just sit on it or that we issue somewhere? What's your advice? I would request the court hold any ruling in abeyance in light of what appears to be, and we don't know which way it's going to go, but in light of the Johnson matter, because, as luck would have it, Mr. Holder's third qualifier is the evading under the residual clause, regardless of the Bing maps or the affidavit of complaint, if that per se. Your suggestion is just not to rule and hold it for a while? Yes, sir. That would be our request. Thank you. Thank you. Thank you. And the case is submitted. Let me call the next case.